UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KINTETSU WORLD EXPRESS (USA),
INC., et al.,

                              Plaintiffs,                          **MEMORANDUM
AND ORDER**

                              -against-                                    14-CV-4947 (KAM)

JOHNSON CONTROLS INCORPORATED,

                              Defendant.
----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

        In this action, plaintiffs Kintetsu World Express (USA), Inc. and Kintetsu World Express (Deutschland) GmbH (collectively, "KWE" or "plaintiffs") allege that defendant Johnson Controls Incorporated ("JCI" or "defendant") has a contractual and/or common law duty to indemnify KWE for charges assessed by the German government in connection with KWE's importation of defendant's products into that country. See generally Amended Complaint (Nov. 26, 2014) ("Am. Compl."), Electronic Case Filing Docket Entry ("DE") #16.

        Currently pending before the Court is a motion by JCI to extend fact discovery from its current due date of December 18, 2015 to February 15, 2016, and, in effect, to amend its answer to add two affirmative defenses. For the reasons explained below, the Court grants JCI's motion in limited part.

## BACKGROUND

        According to the allegations in the Amended Complaint, KWE provides air freight

forwarding services in international commerce, and defendant manufactures display monitors. See Am. Compl. ¶¶ 6-7. Starting in 2009, defendant engaged KWE to export shipments of its monitors from Texas into Germany. See id. ¶ 8. In connection with these shipments, defendant provided plaintiffs with shipping documents that listed nonparty BMW AG as the "cosignee/receiver" of the monitors. See id. ¶ 13. In addition, defendant provided plaintiffs with a European Union ("EU") Customs code classification for the shipments that would permit the monitors to be imported duty free. See id. ¶ 10.

In or around April 2013, the Munich Main Customs Office in Germany conducted an audit related to the imported monitors and determined that the monitors should have been classified under a different customs code and, thus, were in fact subject to EU custom duties. See id. ¶¶ 18-20. Plaintiffs thereafter filed this action, in which they allege that defendant's failure to ensure that its shipments were properly classified caused plaintiffs to incur various costs and charges with the German authorities, including, but not limited to, costs associated with appeals filed by KWE currently pending before the Financial Court Munich. See id. ¶¶ 18-38. Plaintiffs also allege that defendant had an obligation to identify the importer of record if different than BMW AG, the designated cosignee. See id. ¶ 14. As set forth in their amended complaint, plaintiffs seek from defendant "reimbursement of the freight, ancillary, and customs charges, and of the legal fees incurred in contesting the customs charges before the German authorities, in a total amount of $2,937,228.26." Id. ¶ 33.

On March 6, 2015, this Court entered a scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure ("FRCP"). See Minute Entry (Mar. 6, 2015) (the "3/6/15 Order"), DE #22. The 3/6/15 Order gave the parties until April 6, 2015 to amend their

2

pleadings as of right. See id. The 3/6/15 Order further directed the parties to complete fact discovery by October 2, 2015, a deadline that the Court subsequently extended until December 18, 2015. See Minute Entry (Oct. 9, 2015), DE #28; Electronic Order (Dec. 7, 2015).

On December 3, 2015, defendant filed a motion to extend the discovery deadline in this matter until February 15, 2016. See Motion for Extension of Time (Dec. 3, 2015) ("Def. Mot."), DE #30. According to defendant, additional time is needed in order "to obtain additional documentation and information from KWE regarding the extent of KWE's alleged damages[.]" Id. at 1. In particular, defendant argues that it needs more time to explore (1) the extent to which KWE seeks reimbursement of value added tax ("VAT") payments, as opposed to custom duty payments; and (2) whether KWE's admission in the German proceedings that it alone named BMW AG as the importer of record renders KWE responsible for its own legal fees. See Def. Mot. at 2. Defendant also claims it needs additional discovery in order to address plaintiffs' allegedly insufficient response to its Interrogatory #20, which, among other things, requests that KWE categorize its damages. See id. Finally, defendant notes that an extension of the discovery deadline is required because defendant may try to join KWE's German proceedings and that, by January 2016, defendant should know whether or not it will be permitted to do so. See id. at 3.

In opposition, KWE contends that since at least November 2014, when plaintiffs filed the Amended Complaint, defendant has been aware that plaintiffs were seeking to recover VAT payments, and, for that reason, KWE opposes any new affirmative defense related to VAT. See Letter Responding to Request (Dec. 7, 2015) ("Pl. Opp.") at 1-2, DE #31. With respect to the naming of BMW AG as the importer of record, KWE notes that, on September

3

18, 2015, defendant withdrew all of its affirmative defenses related to the importer of record. See Pl. Opp. at 2; see also Defendant's Responses to Plaintiffs' First Set of Interrogatories (Sept. 18, 2015), DE #33 at 21-22. According to KWE, there is therefore no reason for plaintiff to now seek discovery on those issues and/or amend its answer. See Pl. Opp. at 2.

Following plaintiffs' opposition papers, both parties filed a series of unauthorized submissions, expounding *ad nauseam* on their dispute. See Letter Motion for Leave to File Reply in Further Support (Dec. 8, 2015) ("Def. Reply"), DE #32; Response to Motion re Letter Motion for Leave to File (Dec. 9, 2015) ("Pl. Sur-Reply"), DE #33; Letter (Amended) Enclosing Supplemental Document (Dec. 10, 2015) ("Def. Sur-Sur-Reply"), DE #36.[1]

## **DISCUSSION**

Rule 16 allows a party to obtain a modification of a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). It is the movant's burden to establish good cause. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230(LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006). "Whether good cause exists turns on the diligence of the moving party." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and citations omitted).

With respect to a request to extend discovery, the moving party must show why it could not have completed the necessary discovery within the time frame established under the existing scheduling order. See Carlson v. Geneva City Sch. Dist., 277 F.R.D. 90, 95

---

[1] Henceforth, absent advance judicial approval, the Court will decline to read any submission that exceeds what is authorized under the Local Rules or this Court's Individual Rules.

(W.D.N.Y. 2011) (holding that defendants established good cause to extend discovery in order to conduct plaintiff's deposition where defense counsel made sufficient efforts to schedule her deposition prior to the close of discovery); cf. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 927 (2d Cir. 1985) (upholding denial of further discovery where the party "had ample time in which to pursue the discovery that it now claims is essential"); Gotlin v. Lederman, No. 04-CV-3736 (ILG) (RLM), 05-CV-1899 (ILG) (RLM), 2007 WL 1429431, at *3 (E.D.N.Y. May 7, 2007) ("[A]n application to reopen discovery should be denied where the moving party 'has not persuaded th[e] Court that it was impossible to complete the discovery by the established deadline.'") (citation omitted) (collecting cases).

Similarly, with respect to modification of a deadline to amend a pleading, a party will be deemed to have acted less than diligently where the proposed amendment to the pleading is based on information "that the party knew, or should have known," in advance of the deadline to amend. See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F.Supp.2d 453, 457 (S.D.N.Y. 2012) (quoting Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749 (KMW)(DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), aff'd, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009)). Although diligence is the primary focus of a "good cause" analysis, a court may, in its discretion, also consider other factors, such as whether "allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

If a party satisfies the "good cause" standard of Rule 16, the court then determines whether the movant has also met the liberal standards of Rule 15 of the FRCP. See id. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R.

Civ. P. 15(a)(2). "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." Williams v. Citigroup, Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (citation and internal quotations omitted). Leave to amend under Rule 15 may be denied "for good reason, including futility, bad faith, undue delay or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182-83 (1962)); accord TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014).

I. Amendment of Answer

    A. The Proposed Amendments

While framing its motion as one for an extension of discovery, defendant seeks, in effect, to amend its answer to add two affirmative defenses concerning the importer of record (hereinafter, the "Proposed Importer Defenses"). See Def. Mot. at 2; Def. Reply at 1-2; Def. Sur-Sur-Reply at 2. However, because defendant failed to include proposed language for these amendments, the exact scope of the affirmative defenses defendant seeks to add is unclear, as is their relationship with defendant's previously withdrawn Third and Fourth Affirmative Defenses.

Defendant's Third and Fourth Affirmative Defenses alleged that defendant should not be liable for damages, including any increased VAT charge, caused by plaintiffs' wrongful naming of BMW AG as the importer of record. See Answer (Jan. 6, 2015) ("Ans.") ¶¶ 53-54, DE #18. Defendant waived those defenses on September 18, 2015. See Pl. Opp. at 2. As such, in opposing defendant's motion, plaintiffs implied that defendant, in essence, was seeking to reinstate the waived Third and Fourth Affirmative Defenses. See id. Defendant's

6

reply argued that, at the time of the waiver, defendant was not in possession of the KWE admissions — thereby similarly suggesting that defendant wished to reinstate its Third and Fourth Affirmative Defenses. See Def. Reply at 2 ("Moreover, JCI had already withdrawn its affirmative defenses by October 7, having relied in good faith on KWE's document production and interrogatory responses, which now have been shown to be incomplete."). Plaintiffs' sur-reply continued to characterize the proposed amendments as a reinstatement of the waived affirmative defenses. See Pl. Sur-Reply at 3 (arguing that, because defendant waived their Third and Fourth Affirmative Defenses and had "complete and accurate information regarding th[ose] affirmative defenses prior to having waived them[,]" the Court should not now allow defendant to reassert those affirmative defenses). Thus, up through the filing of plaintiffs' sur-reply, both parties treated the proposed amendments as mere reinstatements of the Third and Fourth Affirmative Defenses.

In defendant's unauthorized sur-sur-reply, however, defendant disclaims any intent to reinstate the Third and Fourth Affirmative Defenses as originally pled. See Def. Sur-Sur-Reply at 2. Rather, it appears that the Proposed Importer Defenses will be slightly modified, more narrowed versions of the original Third and Fourth Affirmative Defenses. One defense will relate to VAT charges resulting from the wrongful naming of the importer of record, while the other will relate to legal fees resulting from the same act. While the waived affirmative defenses and the Proposed Importer Defenses both relate to plaintiffs' wrongful naming of BMW AG,[2] defendant identifies two additional distinctions: (1) the Proposed

---

[2] Defendant refers to BMW AG and BMW Zollzweckgemeinshaft interchangably as the named importer of record and, thus, for purposes of this motion, the Court presumes that there is no

Importer Defenses would not apply to the custom duties at issue in this suit; and (2) "neither [of the Proposed Importer Defenses] contend that the correct importer of record was JCI's French subsidiary." Def. Sur-Sur-Reply at 2. In any event, both the Proposed Importer Defenses and the previously waived affirmative defenses stem from the same conduct: plaintiffs' naming of BMW AG as the importer of record. Against this backdrop, the Court considers the parties' arguments with respect to the Third and Fourth Affirmative Defenses in connection with the Proposed Importer Defenses.

B. **Satisfaction of Rule 16 and Rule 15**

The issue now before the Court is whether defendant has shown good cause for amending its answer to include the Proposed Importer Defenses. In opposition, plaintiffs contend that "JCI voluntarily and of its own volition waived its substantive defenses" and "had in its possession complete and accurate information regarding the [Third and Fourth Affirmative Defenses] prior to having waived them." Pl. Sur-Reply at 3. According to defendant, it voluntarily waived those defenses because, at the time it withdrew them, it had insufficient evidence to move forward with those defenses in good faith. See Def. Sur-Sur-Reply at 2. Three weeks after defendant waived the defenses, however, plaintiffs made a production of documents from the German proceeding (the "October 7 Production"). See Def. Reply at 1; Def. Sur-Sur-Reply at 2. Thereafter, defendant hired German counsel to review and advise defendant on the October 7 Production. See Def. Reply at 1. As a result of this review, defendant learned that KWE had made an admission in the German proceedings that,

---

substantive distinction between these two entities. Compare Def. Mot. at 2 with Def. Sur-Sur-Reply at 2; see also Ans. ¶¶ 53-54.

according to defendant, affords a new basis for disclaiming any obligation to pay the VAT charges and for alleging the Proposed Importer Defenses. See Def. Reply at 1-2; Def. Sur-Sur-Reply at 2 (contending that because of this new evidence, "JCI possesses a valid affirmative defense to any claim by plaintiffs for the repayment of VAT due to and caused solely by their own negligence . . . .").[3]

In response, plaintiffs generally allege that the German office of defendant's prior counsel, Baker & McKenzie,[4] participated in drafting the pleadings in the German proceedings and "[t]hus, Baker & McKenzie and, ostensibly JCI, were aware of the issues at bar, including any issues regarding the VAT charges and designation of BMW AG as the importer of record." Pl. Sur-Reply at 2. Notably, plaintiffs do not allege that defendant's predecessor counsel was involved with the German proceedings beyond the drafting of the pleadings and/or had any role at the time of the alleged admission by KWE. See generally id. Nor do plaintiffs

---

[3] Defendant's arguments with respect to the VAT payments are something of a moving target. In its initial motion, defendant suggested that it recently learned in November that, in addition to custom duties, plaintiffs sought reimbursement of VAT tax payments. See Def. Mot. at 2 (noting that the amended complaint categorizes damages as "custom duties" and not VAT payments) (citing Am. Compl. ¶ 32); id. (JCI will seek to amend its answer "to the extent that KWE seeks damages in this lawsuit for VAT withholding by the German government"). After plaintiffs responded, noting, among other things, references in the Amended Complaint to charges incurred by KWE for "import turnover tax" (or VAT), see Pl. Opp. at 2, defendant changed course and, in its subsequent submissions, defendant no longer claims that it was unaware that VAT payments were at issue; rather, defendant now asserts that it did not have an evidentiary basis to recover the VAT payments until it received the October 7 Production and discovered KWE's admission. See Def. Reply at 1-2 ("Those admissions are the impetus for JCI's argument that KWE should be responsible for any payments of VAT."); Def. Sur-Sur-Reply at 2; see also infra p. 10 n.5.

[4] Defendant's current counsel, Riker and Danzig, replaced Baker & McKenzie in this matter on June 5, 2015. See Motion to Substitute Attorney (June 3, 2015), DE #25; Order (June 5, 2015), DE #26.

take issue with defendant's contention that KWE's admission in the German proceeding is relevant to KWE's damages in this action. See generally id. Therefore, given this new evidence, the Court concludes that defendant has shown good cause under Rule 16 to amend its answer to add the Proposed Importer Defenses.

Rule 15 also supports the inclusion of these defenses. Plaintiffs make no claim that the defenses are futile, that defendant is acting in bad faith or that defendant unduly delayed in seeking this amendment following the October 7 Production. See generally Pl. Opp.; Pl. Sur-Reply. Moreover, while plaintiffs contend that JCI should not be allowed to assert the defenses because "it has, essentially, changed its mind" with respect to the Third and Fourth Affirmative Defenses, plaintiffs do not identify any particular prejudice, let alone undue prejudice, resulting from such an amendment. See Pl. Sur-Reply at 3.

Accordingly, defendant is directed to file its amended pleading with the Proposed Importer Defenses, via ECF, no later than December 21, 2015.[5]

---

[5] The Court cautions defendant that, in authorizing defendant to add the Proposed Importer Defenses, the Court is not giving defendant *carte blanche* to explore every and any possible VAT-related defense or to otherwise amend its answer. Rather, the Proposed Importer Defenses must be narrowly tailored to the KWE admission. Defendant has not shown good cause to allow an amendment that goes beyond that recent discovery, as there is sufficient indicia in the pleadings and the record to have put defendant on notice, from the early stages of this litigation, that plaintiffs might be seeking to recover VAT payments, even if the exact amount or source of the charges was unclear. See e.g., Am. Compl. ¶¶ 30-31 (alleging that Munich Main Customs Office informed KWE that "further charges were due in the amount of EUR 637,875.00 (EUR 536,029.45 custom duties and EUR 101,895.55 import turnover tax)"); Pl. Opp. at 2; cf. Ans. ¶¶ 53-54 (arguing that plaintiffs' own negligence caused any increase in VAT charges).

## II.     Extension of Discovery Deadline

### A.     Proposed Importer Defenses & German Proceedings

Defendant requests that it have until February 15, 2016 to conduct discovery with respect to the Proposed Importer Defenses and to assess whether it will be joining the proceedings in Germany. See Def. Mot. at 3 (stating that defendant's German counsel has advised that "a decision as to whether JCI may participate in the Munich Financial Court proceedings will likely be made in January 2016"). While the Court is prepared to extend fact discovery to allow defendant to explore its new affirmative defenses, it declines to do so merely on the possibility that defendant may "potentially" join the German proceedings, if so "permitted" by the German court. Fact discovery is hereby extended until January 29, 2016 for the limited purpose of allowing the parties to conduct discovery concerning the Proposed Importer Defenses, including any VAT charges resulting from the naming of BMW AG as the importer of record.

### B.     Interrogatory #20

Defendant also requests an extension of time so that it may seek a full and proper response from plaintiffs regarding defendant's Interrogatory #20, which stated:

> Describe in detail each item of damage that you claim, and include in your response the count of the amended complaint to which the item of damages concerns; the category into which each item of damages falls, i.e., general damages, special or consequential damages (such as lost profits), interest and any other relevant categories; the factual basis for each item of damages; an explanation of how you computed each item of damages, including but not limited to any mathematical formula used; and any efforts undertaken by plaintiffs to mitigate each item of damage.

Def. Mot. at 2. Plaintiffs' response to that interrogatory reads as follows:

11

> As stated in the amended complaint, KWE seeks an amount to be determined at trial, but for no less than $2,937,228.26 with interest and costs, representing the amount paid by KWE for freight, ancillary, and customs charges and for legal fees incurred in contesting the customs charges before the German authorities. This amount represents general damages.

Id.

In opposition to defendant's motion, plaintiffs contend that they have provided numerous documents that set forth "the types and amounts of particular damages sought by KWE." Pl. Opp. at 2.[6] To be sure, requiring plaintiffs to respond to defendants' Interrogatory #20 as drafted would be overly burdensome, particularly at this late stage of the discovery phase. That said, plaintiffs' response in its current form is clearly deficient. Thus, plaintiffs are directed to amend their response to provide a breakdown of their damages into more specific categories (e.g., legal fees, interest, custom duties).

More importantly, plaintiffs are reminded of their obligations under Rule 26(a) to provide defendant with their computation of damages (including any amended computation as discovery progresses), or else risk preclusion of the same at trial. See Fed. R. Civ. P. 26(a)(1)(A)(iii); see also Max Impact, LLC v. Sherwood Grp., Inc., No. 09 Civ. 902 (JGK) (HBP), 2014 WL 902649, at *5 (S.D.N.Y. Mar. 7, 2014) (defendant violated Rule 26(a)(1)(A)(iii), where it provided requesting party "with total dollar figures for each category of damages [that] were unaccompanied by any analysis whatsoever" and subsequent document

---

[6] Plaintiffs also note that defendant waited more than two months to raise an objection to plaintiffs' response to Interrogatory #20. See Pl. Sur-Reply at 3. Although defendant has offered no reason to justify the two-month delay in seeking to compel a more specific response to Interrogatory #20, see generally Def. Sur-Sur-Reply, defendant did raise the issue prior to the close of fact discovery, and, therefore, defendant's motion concerning Interrogatory #20 is not untimely.

production "failed to provide a calculation or formula through which the figures were derived"); Agence France Presse v. Morel, 293 F.R.D. 682, 684-85 (S.D.N.Y. 2013) (court precludes additional statutory damages under the Digital Millennium Copyright Act not identified in counterclaimant's Rule 26 disclosures, noting that Rule 26 "damages computations and the documents supporting those computations are two different things, and Rule 26 obliges parties to disclose and update the former as well as the latter"); Williams v. Boulevard Lines, Inc., No. 10 Civ. 2924 (DF), 2013 WL 5652589, at *5-6 (S.D.N.Y. Sept. 30, 2013) (plaintiff's computation of compensatory damages in his Rule 26 disclosures was "patently deficient," where he failed to "quantif[y] his claimed compensatory damages beyond the *ad damnum* clause contained in his Complaint and Amended Complaint, by which — without any breakdown — he demanded $5 million").

## CONCLUSION

In conclusion, the Court grants defendant's motion in limited part. By December 29, 2015, plaintiffs are directed to provide defendant with an amended response to Interrogatory #20 to the extent specified herein. In addition, the Court finds that defendant is entitled, pursuant to Rules 16 and 15 of the FRCP, to amend its answer for the limited purpose of asserting the Proposed Importer Defenses. Defendant is directed to file its amended pleading, via ECF, no later than December 21, 2015.

Finally, the Court extends discovery until January 29, 2016 for the limited purpose of allowing discovery concerning these new affirmative defenses. Defendant has not shown good cause for further extending the discovery period in order for defendant to attempt to join the

German proceedings.  Requests for a premotion conference are due by February 5, 2016.

        **SO ORDERED.**

**Dated:**    **Brooklyn, New York**
            **December 17, 2015**

                                        /s/ *Roanne L. Mann*
                                      **ROANNE L. MANN**
                                      **UNITED STATES MAGISTRATE JUDGE**